IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 24-CR-00278-GKF |
| JACKEY WAYNE NUNAMAKER, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss the Indictment [Doc. 19] of defendant Jackey Wayne Nunamaker. For the reasons set forth below, the motion is denied.

**I.     Background/Procedural History**

On August 21, 2024, a grand jury returned an Indictment charging Mr. Nunamaker with one count of Felon in Possession of a Firearm pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(8). [Doc. 2]. Section 922(g)(1) provides as follows: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Specifically, the Indictment alleges that, prior to November 24, 2023, Mr. Nunamaker had previously been convicted of at least one of the following crimes punishable by imprisonment for terms exceeding one year:

1. Burglary 2nd Degree (Count One), Case No. CF-2017-433, in the District Court of Creek County, State of Oklahoma, on November 14, 2017;

2. Knowingly Concealing Stolen Property (Count Two), Case No. CF-2017-433, in the District Court of Creek County, State of Oklahoma, on November 14, 2017;

3. Malicious Injury to Property Over $1000, Case No. BCF-2010-238, in the District Court of Creek County, State of Oklahoma, on January 26, 2011;

    4.       Burglary 2nd Degree (Count One), Case No. BCF-2010-327, in the District Court of Creek County, State of Oklahoma, on January 26, 2011; and

    5.       Burglary 2nd Degree (Count Two), Case No. BCF-2010-327, in the District Court of Creek County, State of Oklahoma, on January 26, 2011.

[Doc. 2, p. 1]. The Indictment further alleges that, knowing of his prior convictions, Mr. Nunamaker knowingly possessed a Savage Arms, Model MSR-15, multi-caliber semi-automatic rifle, serial number 03-027309. [*Id.* at p. 2].

Mr. Nunamaker seeks to dismiss the Indictment, arguing that 18 U.S.C. § 922(g)(1) violates his constitutional right to bear arms as set forth in the Second Amendment to the U.S. Constitution. [Doc. 19]. The government filed a response in opposition [Doc. 23] and, with the court's leave, Mr. Baker filed a reply [Doc. 27]. The court held a hearing on the motion on October 1, 2024. [Doc. 29].

## II.    Second Amendment Jurisprudence

Prior to considering the parties' arguments, it is necessary to understand the "still-developing area" of Second Amendment jurisprudence, a field "still in the relatively early innings." *United States v. Rahimi*, 602 U.S. —, 144 S. Ct. 1889, 1923 (2024) (Kavanaugh, J., concurring).

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the U.S. Supreme Court recognized that the Second Amendment "protect[s] an individual right to keep and bear arms for self-defense." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022); *see also Heller*, 554 U.S. at 595 ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms.").[1] However, the Court also

---

[1] In *McDonald v. City of Chicago,* 561 U.S. 742 (2010), the Supreme Court held that the Due

recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and stated that, "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," all of which were "presumptively lawful." *Heller*, 554 U.S. at 626-27, 627 n.26.

In light of the *Heller* decision, in *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), the Tenth Circuit considered a constitutional challenge to § 922(g)(1). In a published decision, the Tenth Circuit rejected the constitutional challenge, reasoning, "[t]he Supreme Court . . . explicitly stated in *Heller* that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *McCane,* 573 F.3d at 1047. Thus, *McCane* "foreclose[d]" any argument that § 922(g)(1) violated the Second Amendment. *See United States v. Gieswein*, 887 F.3d 1054, 1064 n.6 (10th Cir. 2018).

Things remained much the same until the Supreme Court issued its decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). There, the Court began by noting that, "[i]n the years since [*Heller* and *McDonald*], the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen,* 597 U.S. at 17. However, the Court rejected the two-part means-ends test, reasoning it was "one step too many." *Id.* at 19. Instead, the Court articulated the relevant inquiry, stating:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's

---

Process Clause of the Fourteenth Amendment incorporates the Second Amendment, such that the right applies to the States.

> historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24. To determine whether a firearms regulation is "consistent with the Nation's historical tradition of firearm regulation," the *Bruen* Court stated that district courts should consider "whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Id.* at 27.

The Court recognized that the inquiry will often require "reasoning by analogy" and "[l]ike all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar,'" including both in "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 28-29. Significantly, however, the Court stated that "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphasis in original).

As recognized by Justice Barrett, "[c]ourts . . . struggled with this use of history in the wake of *Bruen*." *Rahimi*, 144 S. Ct. at 1925 (Barrett, J., concurring). For this court's part, the court applied the historical analysis as set forth in *Bruen* and concluded that "§ 922(g)(1) is 'consistent with the Nation's historical tradition of firearm regulation' and the statute" was not facially unconstitutional. *United States v. Coombes*, 629 F. Supp. 3d 1149, 1160 (N.D. Okla. 2022); *United States v. Mayfield*, 660 F. Supp. 3d 1135 (N.D. Okla. 2023). However, the court permitted an as-applied challenge. *See United States v. Forbis,* 687 F. Supp. 3d 1170, 1176-79 (N.D. Okla. 2023).

But, as recognized by this district's Chief Judge John F. Heil III, "opinions by well-respected judges reach[ed] conflicting conclusions" and "a circuit split [was] developing on the issue." *United States v. Nakedhead,* No. 23-CR-109-JFH, 2023 WL 5277905, at **2, 2 n.2 (E.D.

Okla. Aug. 16, 2023).

In the midst of the historical surveys, on September 15, 2023, the Tenth Circuit Court of Appeals issued a published decision in *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023). Therein, the Circuit considered whether *Bruen* had overruled *McCane*. Recognizing that *Bruen* "created a test" that "didn't exist when [it] decided *McCane*," the Circuit stated "the emergence of a new test doesn't necessarily invalidate . . . earlier precedent." *Vincent,* 80 F.4th at 1200. Rather, the Circuit concluded it was obligated to apply its prior precedent and could not "jettison *McCane*" unless *Bruen* "indisputably and pellucidly abrogated" it. *Id*.

Looking to *McCane*, the Circuit characterized its decision as "rel[ying] solely" on the language in *Heller* describing felon dispossession statutes as "presumptively lawful." *Id.* at 1201. Noting that six of the nine Justices had reaffirmed language in *Heller* that it was not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons" and, further, that the Court had apparently approved of "shall-issue" regimes and background checks, the Circuit concluded that *Bruen* "did not indisputably and pellucidly abrogate our precedential opinion in *McCane*." *Id.* at 1201-02. Thus, *Bruen* did not overrule *McCane* and, in the Tenth Circuit, § 922(g)(1) was not facially unconstitutional. *Id.* at 1202.

Further, the Circuit stated that, "[u]nder *McCane*, we have no basis to draw constitutional distinctions based on the type of felony involved." *Id.* at 1202. Rather, "*McCane* . . . upheld the constitutionality of the federal ban for *any* convicted felon's possession of a firearm." *Id.; see also In re United States*, 578 F.3d 1195, 1200 (10th Cir. 2009) ("We have already rejected the notion that *Heller* mandates an individualized inquiry concerning felons pursuant to § 922(g)(1)."). Thereafter, district courts in this Circuit uniformly applied the Tenth Circuit's precedential decision in *Vincent* to reject both facial and as-applied constitutional challenges to § 922(g)(1).

*See, e.g., United States v. Gaines*, No. 23-10121-JWB, 2024 WL 2260938 (D. Kan. May 17, 2024); *United States v. Montoya*, No. 21-CR-00997-KWR, 2024 WL 1991494, at *3 (D.N.M. May 6, 2024); *United States v. Girty*, No. 24-CR-031-JFH, 2024 WL 1677718 (E.D. Okla. Apr. 17, 2024); *United States v. Mumford*, No. CR-24-10-F, 2024 WL 1183673, at *1 (W.D. Okla. Mar. 19, 2024).[2]

On June 21, 2024, the U.S. Supreme Court issued its opinion in *Rahimi,* which considered the constitutionality of 18 U.S.C. § 922(g)(8). There, the Court recognized that "some courts have misunderstood the methodology" of *Heller* and *Bruen*, which "were not meant to suggest a law trapped in amber." *Rahimi,* 144 S. Ct. at 1897. The Court articulated the Second Amendment constitutional test to require lower courts to consider "whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Id.* at 1898 (emphasis added). Specifically, the court must "ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (quoting *Bruen,* 597 U.S. at 26-31). The Court

---

[2] The court particularly notes the decision of fellow U.S. District Judge John D. Russell, who explained:

> If this Court had a blank slate on which to write this Opinion, it would, by necessity, follow the *Bruen* analysis and consider whether the mere possession of a handgun and ammunition is protected Second Amendment activity (it is) and whether, in this case, the Government has demonstrated that the restriction set forth in § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation (it has not). But the slate is not blank. The Tenth Circuit has spoken, and, in doing so, has unequivocally declared that its decision in *McCane* remains good law. This Court will follow that guidance, which, as the concurrence in *McCane* recognizes, is how it should be – even if the practice leaves open the possibility that the law would have been better served if the regulations *Heller* addressed in dicta had been left to later cases.

*United States v. Gaskey*, — F. Supp. 3d —, 2024 WL 1624846, at *3 (N.D. Okla. Apr. 15, 2024) (internal citations and quotations omitted).

reiterated that "a 'historical *twin*' is not required," *Rahimi,* 144 S. Ct. at 1903 (quoting *Bruen,* 597 U.S. at 30), because even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen,* 597 U.S. at 30).

Having reviewed the history of American gun regulations, the Court recognized that, "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Rahimi*, 144 S. Ct. at 1899. Specifically, the Court pointed to (1) surety laws and (2) "going armed" laws. *Id.* at 1899-901. Surety laws "targeted the misuse of firearms" and "provided a mechanism for preventing violence before it occurred." *Rahimi*, 144 S. Ct. at 1900. In contrast, "going armed" laws "provided a mechanism for punishing those who had menaced others with firearms" through "forfeiture of the arms . . . and imprisonment." *Rahimi,* 144 S. Ct. 1900-01. Thus, the Court held:

> Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed. Section 922(g)(8) is by no means identical to these founding era regimes, but it does not need to be. Its prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent.
>
> Like the surety and going armed laws, Section 922(g)(8)(C)(i) applies to individuals found to threaten the physical safety of another. This provision is "relevantly similar" to those founding era regimes in both why and how it burdens the Second Amendment right. Section 922(g)(8) restricts gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do. Unlike the regulation struck down in *Bruen*, Section 922(g)(8) does not broadly restrict arms use by the public generally.

*Rahimi,* 144 S. Ct. 1901 (internal citations omitted).

Although not purporting to "undertake an exhaustive historical analysis . . .of the full scope of the Second Amendment," the Court concluded, "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the

Second Amendment." *Rahimi,* 144 S. Ct. at 1903.

Less than two weeks later, on July 2, 2024, the U.S. Supreme Court granted certiorari in *Vincent v. Garland*, vacated the judgment, and remanded the matter to the Tenth Circuit for further consideration in light of *Rahimi*. *Vincent v. Garland,* 144 S. Ct. 2708 (2024).

On August 5, 2024, the Tenth Circuit received the Judgment of the U.S. Supreme Court, recalled the mandate issued in *Vincent*, and vacated its prior judgment. *Vincent v. Garland*, No. 21-4121 (10th Cir. Aug. 5, 2024), [Doc. 010111089964]. The Circuit has set a briefing schedule, directing the parties to file supplemental briefs addressing the impact of *Rahimi.*

### III.   Analysis

Mr. Nunamaker argues that § 922(g)(1) is unconstitutional as applied to him.[3] In response, the government first argues (1) *McCane* forecloses Mr. Nunamaker's challenge and (2) § 922(g)(1) is constitutional as applied to Mr. Nunamaker. Thus, it is first necessary to consider the status of the *McCane* decision in light of the foregoing Second Amendment jurisprudence.

A.   *Status of McCane and Vincent*

The government argues that, despite the order granting certiorari, vacating judgment, and remanding (GVR) in *Vincent*, neither *Bruen* nor *Rahimi* abrogated *McCane* and *McCane* forecloses Mr. Nunamaker's challenge. [Doc. 23, pp. 7-11].

The Supreme Court has stated that a GVR "is appropriate when 'intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome' of the matter." *Wellons v. Hall*, 558 U.S. 220, 225 (2010) (quoting *Lawrence v. Chater,* 516 U.S. 163, 167 (1996) (per curiam)). Although

---

[3] Mr. Nunamaker does not assert a facial challenge to § 922(g)(1). *See* [Doc. 19].

"[t]he GVR order is not equivalent to reversal on the merits, nor is it 'an invitation to reverse,'" it does require the Circuit (and this court) to determine whether *Rahimi* "compels a different resolution" of *Vincent*. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 845 (6th Cir. 2013).

As discussed above, in *Vincent,* the Circuit characterized *McCane* as having "relied solely on . . . language from *Heller*." *Vincent,* 80 F.4th at 1201. Thus, despite recognizing the two-step test articulated in *Bruen*, the court did not apply it. Rather, the Circuit focused on whether anything in *Bruen* cast doubt on *Heller*'s language or "the constitutionality of longstanding prohibitions on possession of firearms by convicted felons." *Vincent,* 80 F.4th at 1201.

Having reviewed *Rahimi*, the court concludes that it compels a different resolution of *Vincent*. Specifically, in *Rahimi,* the Supreme Court recognized that "some courts have misunderstood the methodology of [its] recent Second Amendment cases." *Rahimi,* 144 S. Ct. at 1897. In response to such misunderstandings, the Court repeatedly emphasized that its Second Amendment precedent "direct[s] courts to examine our 'historical tradition of firearm regulation' to help delineate the contours of the right." *Id*. "A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances,'" with "why and how the regulation burdens the right" being "central to th[e] inquiry." *Id.* at 1898; *see also id.* at 1910 (Gorsuch, J., concurring) ("Among all the opinions issued in this case, its central messages should not be lost. The Court reinforces the focus on text, history, and tradition, following exactly the path we described in *Bruen*.").

In *Vincent*, the Tenth Circuit did not conduct a historical inquiry. It did not consider the "central" inquiry of "why and how" § 922(g)(1) burdens a convicted felon's Second Amendment

right. *Rahimi,* 144 S. Ct. at 1898. Instead, the Circuit relied solely on *Bruen*'s consideration of *Heller*'s language regarding "longstanding prohibitions" that are "presumptively lawful." *Vincent,* 80 F.4th at 1201-02. In doing so, the Tenth Circuit "stretch[ed]" *Heller*'s words "beyond their context." *Rahimi,* 144 S. Ct. at 1910 (Gorsuch, J., concurring). *Rahimi* requires that the court "examine our 'historical tradition of firearm regulation'" to "ascertain whether [§ 922(g)(1)] is 'relevantly similar' to laws that our tradition is understood to permit" and therefore compels a different result. *Rahimi,* 144 S. Ct. at 1897-98; *see also United States v. Duarte*, 101 F.4th 657, 668 (9th Cir. 2024), *rehearing en banc granted and vacated by,* 108 F.4th 786 (9th Cir. 2024) ("'Simply repeat[ing] *Heller*'s language' about the 'presumptive[] lawful[ness]' of felon firearm bans will no longer do after *Bruen*."); *United States v. Morgan*, No. 23-10047-JWB, 2024 WL 3936767, at *4 (D. Kan. Aug. 26, 2024) (saying of the *Vincent* GVR Order, "[t]he court interprets that as indicating that the Supreme Court means what it says: the constitutionality of laws regulating the possession of firearms under the Second Amendment must be evaluated under the *Bruen* framework"). Thus, *McCane* does not foreclose Mr. Nunamaker's challenge.

      B.      As Applied Challenge

"A facial challenge considers the restriction's application to all conceivable parties, while an as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case." *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1248 (10th Cir. 2023) (quoting *iMatter Utah v. Njord*, 774 F.3d 1258, 1264 (10th Cir. 2014)). The distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). "[I]t does not speak at all to the substantive rule of law necessary to establish a constitutional violation," and therefore the same substantive constitutional analysis applies. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019); *see also Gross*

*v. United States,* 771 F.3d 10, 14-15 (D.C. Cir. 2014) ("[T]he substantive rule of law is the same for both challenges."). Accordingly, the court must consider whether § 922(g)(1), as applied to Mr. Nunamaker, is consistent with the Second Amendment. That is, whether permanently disarming Mr. Nunamaker is "consistent with the Nation's historical tradition of firearm regulation," including "how and why" § 922(g)(1) burdens Mr. Nunamaker's "right to armed self-defense." *Bruen*, 597 U.S. at 24, 28-29.

The government first argues that categorically disarming felons does not implicate the Second Amendment because the right extends only to "ordinary, law-abiding, adult citizens." [Doc. 23, pp. 12-13]. However, this court has previously declined to carve-out felons from the Second Amendment's protection of "the people." *United States v. Coombes*, 629 F. Supp. 3d 1149, 1156 (N.D. Okla. 2022); *see also United States v. Williams*, 113 F.4th 637, 649 (6th Cir. 2024). Further, the Savage rifle constitutes an "arm" within the Second Amendment's protection and, by allegedly possessing same, Mr. Nunamaker "kept" the weapon. *See Heller,* 554 U.S. at 582 ("[T]he most natural reading of 'keep Arms' as an individual right unconnected with militia service."). Thus, the Second Amendment presumptively protects Mr. Nunamaker's conduct and the government must "justify [§ 922(g)(1)] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

The government directs the court to historical sources that it contends support the categorical disarmament of all or most felons. However, this court has previously recognized that "[s]imply lumping all felons together is insufficient." *Forbis,* 687 F. Supp. 3d at 1177. Further, the government fails to explain how § 922(g)(1) "is 'relevantly similar'" to the cited sources. *Rahimi,* 144 S. Ct. at 1898. For this reason, the court previously concluded the cited sources were not sufficiently analogous and therefore "not strong evidence that disarmament of all felons—

regardless of the crime of conviction—'comport[s] with the principles underlying the Second Amendment.'" *United States v. Smith*, No. 24-CR-00228-GKF, 2024 WL 4138621, at *7 (N.D. Okla. Sept. 10, 2024) (quoting *Rahimi*, 144 S. Ct. at 1898). The court declines to revisit its prior conclusions.

Finally, the government argues that a tradition exists of "disarming those who were deemed to present a special danger if armed" [Doc. 23, p. 21], and that Mr. Nunamaker constitutes such a person. That is, the government asserts that Mr. Nunamaker's prior burglary conviction "fails to separate him from the general class of felons who could historically be stripped of gun rights."[4] [*Id.* at p. 23].

The government first cites this court's prior decision in *Coombes*, where the court denied an as-applied challenge to § 922(g)(1) involving a defendant with a prior conviction for Oklahoma Burglary Second Degree. *Coombes,* 629 F. Supp. 3d at 1162-63. However, Mr. Nunamaker raises an argument not raised in *Coombes*—specifically, that, at the time of conviction, the Oklahoma Second Degree Burglary statute, Okla. Stat. tit. 21, § 1435, encompassed conduct less serious than generic burglary and therefore the court should apply the categorical approach to determine whether the prior conviction demonstrates that defendant would present a danger if armed.[5]

---

[4] The government does not contend that Mr. Nunamaker's prior convictions for Knowingly Concealing Stolen Property and Malicious Injury to Property Over $1,000 deem him a special danger if armed, nor does the government point the court to any historical analogues justifying application of § 922(g)(1) to Mr. Nunamaker based on those prior convictions. *See generally* [Doc. 23]. Thus, the court does not consider application of § 922(g)(1)'s firearm prohibition to Mr. Nunamaker based on his prior convictions for Knowingly Concealing Stolen Property or Malicious Injury to Property Over $1,000.

[5] At the time of his convictions, Okla. Stat. tit. 21, § 1435, Burglary in Second Degree – Acts Constituting, provided as follows: "Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin operated or vending machine or device with intent to steal any property therein or to commit any felony, is

As an initial matter, the court notes that Mr. Nunamaker cites no cases applying the categorial approach in the context of the *Bruen* analysis, nor has the court identified any. Rather, it appears the few courts to have considered the issue have rejected application of the categorical approach. *See United States v. Hoeft,* No. 21-CR-40163-KES, 2023 WL 2586030, at *5 (D.S.D. Mar. 17, 2023); *United States v. Scott*, No. 23-CR-165-HEH, 2024 WL 3835068, at *2 n.1 (E.D. Va. Aug. 15, 2024). Other courts, while not deciding the issue, have expressed reluctance to impose the categorical approach on the *Bruen* analysis. *See, e.g., United States v. Teston,* — F. Supp. 3d —, 2024 WL 1621512, at *23 n.12 (D.N.M. Apr. 15, 2024) ("In the absence of specific instruction from a higher court, the Court is reluctant to impose this morass of confusion [the categorical approach] onto Second Amendment jurisprudence."). These decisions are persuasive.

Further, "[w]hether a crime is categorically violent is a different inquiry from whether it is indicative of dangerousness." *Hoeft,* 2023 WL 2586030, at *5. This court has recognized that "'the historical record' demonstrates 'that the public understanding of the scope of the Second Amendment was tethered to the principle that the Constitution permitted the dispossession of persons who demonstrated that they would present a **danger** to the public *if armed*.'" *See, e.g., Forbis,* 687 F. Supp. 3d at 1178. Although violence is relevant, the inquiry does not end there.

Finally, application of the categorical approach goes too far in requiring a "historical twin." As discussed above, "a 'historical *twin*' is not required," *Rahimi,* 144 S. Ct. at 1903 (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 30 (2022)), because even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen,* 597 U.S. at 30). Rather, the relevant inquiry "whether the challenged regulation is consistent with the *principles* that

---

guilty of burglary in the second degree."

underpin our regulatory tradition," *Rahimi*, 144 S. Ct. at 1898 (emphasis added), which requires the court to "ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (quoting *Bruen,* 597 U.S. at 26-31). Application of the categorical approach would render the *Bruen* inquiry "a regulatory straightjacket," despite the Supreme Court's clear directive to the contrary.[6] *See Bruen*, 597 U.S. at 30.

For the foregoing reasons, absent specific instruction from the U.S. Tenth Circuit Court of Appeals or the U.S. Supreme Court, the court declines to apply the categorical approach in connection with the *Bruen* analysis.

Turning to Mr. Nunamaker's Oklahoma Second Burglary Second Degree conviction, as previously recognized by this court, "the legislative and judicial history of this country demonstrate a long-standing tradition of treating burglary as a crime of violence." *Coombes*, 629 F. Supp. 3d at 1163.[7] Further, the U.S. Court of Appeals for the Sixth Circuit has characterized burglary, like drug trafficking, as "a crime that inherently poses a significant threat of danger." *United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024). This is because "[b]urglary creates 'the possibility of a face-to-face confrontation between the burglar and a third party . . . who comes

---

[6] During the October 1, 2024 motion hearing, Mr. Nunamaker argued that application of the categorical approach would avoid a "whack-a-mole approach" pursuant to which the court "pluck[s] laws out of history." However, *Bruen* **requires** this court to look to history "because 'it has always been widely understood that the Second Amendment . . . codified a *pre-existing* right.'" *Bruen,* 597 U.S. at 20 (quoting *Heller,* 554 U.S. at 592). The Supreme Court imposed the requirement despite acknowledging that "[h]istorical analysis can be difficult; it sometimes requires resolving threshold questions, and making nuanced judgments about which evidence to consult and how to interpret it." *Bruen,* 597 U.S. at 25 (*McDonald*, 561 U.S. at 803-04).

[7] In fact, the Federal Firearms Act of 1938—§ 922(g)(1) in its earliest form—disarmed persons convicted of certain enumerated crimes, one of which was burglary. *See United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011) (discussing history of the statute); Federal Firearms Act, 52 Stat. 1250 (1938).

to investigate.'" *United States v. Taylor,* No. 22-CR-00022-GFVT-EBA, 2023 WL 1423725, at *3 (E.D. Ky. Jan. 31, 2023), *appeal filed,* No. 23-5644 (6th Cir. July 17, 2023) (quoting *James v. United States,* 550 U.S. 192, 203-04 (2007), *overruled by Johnson v. United States*, 576 U.S. 591 (2015)); *see also United States v. Garcia-Rivera*, No. 23-CR-118-JDW, 2023 WL 8894337, at *2 (E.D. Pa. Dec. 26, 2023), *appeal filed*, No. 24-1742 (3d Cir. Apr. 23, 2024) (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)) ("Burglary has an 'inherent potential for harm to persons,' given the possibility that a 'violent confrontation' could erupt between burglar and occupant.").

Given that burglary poses a significant threat of danger and violent confrontation, the court concludes that disarming Mr. Nunamaker, a person thrice convicted of Burglary Second Degree, is consistent with the historical tradition of disarming those persons "who demonstrated that they would present a danger to the public if armed," *Forbis*, 687 F. Supp. 3d at 1178, or "who present a credible threat to the physical safety of others." *Rahimi,* 144 S. Ct. at 1902. "[T]he historic understanding of burglary comports with the modern reason why Section 922(g)(1) burdens Mr. [Nunamaker's] rights"—protection of society from the risk of a violent confrontation. *Taylor,* 2023 WL 1423725, at *5. Based on this underlying principle, sufficient historical analogues exist such that imposition of § 922(g)(1) on Mr. Nunamaker passes constitutional muster, although Oklahoma Burglary Second Degree is broader than common law or "generic" burglary. *See Rahimi,* 144 S. Ct. at 1898 ("[W]hen a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'").

## VI.  Conclusion

WHEREFORE, the Motion to Dismiss the Indictment [Doc. 19] of defendant Jackey Wayne Nunamaker is denied.

IT IS SO ORDERED this 7th day of October, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE